## In re HENRY HEYER & SON, Inc.

## AMERICAN FURNITURE MART BLDG. CORPORATION v. SCHWEMER.

### Nos. 5382, 5397.

Circuit Court of Appeals, Seventh Circuit.

June 19, 1935.

W. L. Gold and Morris Karon, both of Milwaukee, Wis., for appellant.

Frank P. Burke and Giles F. Clark, both of Milwaukee, Wis., for appellee.

Before EVANS, FITZHENRY, and ALSCHULER, Circuit Judges.

ALSCHULER, Circuit Judge.

The appeals assail an order of the court sustaining the referee's disallowance of appellant's petition to establish a lien upon the assets of the bankrupt.

From the stipulated facts it appears that on December 11, 1931, appellant commenced an action in the circuit court of Milwaukee county, Wis., against the bankrupt and Gilbert R. Heyer for the recovery of a debt. In the same court, on January 5, 1932, appellant commenced a garnishment proceeding against "Gilbert R. Heyer, individually and as president and treasurer of Henry Heyer & Son, Inc., garnishee defendant," and process of garnishment was at once served on Heyer, who at first answered that he owed the corporation $5,237.06, but afterwards was given leave to amend, whereupon he filed an answer denying liability as garnishee, with which answer appellant took issue.

It was further stipulated that at the time of the service of said garnishee summons on January 5, 1932, and at all times thereafter, said Gilbert R. Heyer was the president, treasurer, and a director, and the active manager of the property and affairs of said Henry Heyer & Son, Inc.; that the actual market and cash value of the personal property of said Henry

Heyer & Son, Inc., on hand in its factory on January 5, 1932, was no less than $2,300; that in the hearing before the referee Heyer testified that at the time the garnishee summons was served on him he was president, treasurer, and active general manager of bankrupt, his wife being secretary, and an employee being vice president; that the three were the directors, and that the corporation was a family corporation—a closed corporation; that after his father's death in 1929, the business was incorporated, and that he held 990 out of 1,000 shares of the outstanding stock, the ten shares being held by the other two; that as such officer he had possession and control of the corporation's property, and that everybody employed by the corporation did as he directed; and that he gave orders and managed the business of the corporation and determined what to do.

Heyer was asked and answered the following questions:

"Q. This property was under the control of directors and officers? A. Yes, sir.

"Q. Just ordinary control? A. I assumed all control.

"Q. You were General Manager and dictator and so on? A. Yes.

"Q. There was no assignment paper or instrument in existence at the time showing you had any more pecuniary right than any of the other officers or directors? A. No."

It is also stipulated that in January, 1932, bankrupt owned the identical real estate, machinery, equipment, furniture, fixtures, and automobile as are listed in the bankruptcy schedules and were sold on the bankruptcy sale; that in January, 1932, the raw materials and finished goods on hand were about four times more than when the bankruptcy petition was filed—about one-seventh of the raw materials and finished goods in the factory in January, 1932, being still on hand and sold at the bankruptcy sale; and that the corporation's books show that in January, 1932, the inventory of raw material was about $20,000 and of finished material about $13,000.

At the trustee's sale, the chattel property, consisting of stock in trade, finished and unfinished, machinery, equipment, furniture, fixtures, and automobile, realized $2,300; and the equity in real estate $850.

Bankrupt's business was a small furniture factory in Milwaukee, with about fifteen employees.

Judgment in appellant's principal action was entered March 29, 1934, against the defendants therein in the sum of $3,025.75, but no disposition of the issue in the garnishment proceedings appears to have been had, unless this is reflected in the judgment against Heyer. The debtor was adjudicated a bankrupt April 2, 1934, on its voluntary petition.

It may be conceded for the purposes of the case that if at the time of service of the garnishment summons on Heyer he had such possession of property of the Heyer corporation as would have given appellant a lien thereon, such lien would be enforceable in the bankruptcy, and we then meet the real question in the case; viz., Was Heyer in such control and possession of the corporate property as would subject it to the garnishment proceeding brought against him? Admittedly if the property was in possession and control of the corporation, service of garnishment process on its president or other officers could confer no lien.

Appellant's contention seems to be that because of Heyer's ownership of nearly all the stock, his dominating influence in the conduct of the corporation's affairs, and the dictatorial control which he exercised upon the policies of the corporation and its business, he had, as an individual, such possession and control of the corporate property, separate and apart from the corporation itself, as will subject him to garnishment at the suit of creditors of the corporation.

Whether or not the garnishment created a lien must be determined under the law of Wisconsin. Appellant's main if not sole reliance for its position is upon the case of Mayo et al. v. Hansen, Garnishee, 94 Wis. 610, 69 N. W. 344, 36 L. R. A. 561, 59 Am. St. Rep. 919. There it seems the treasurer of a private corporation, who in this capacity had in his possession moneys which belonged to his corporation, was served as garnishee in a suit against the corporation. It is evident from the discussion of the case that the treasurer had the funds in his entire and exclusive possession, the court reciting the fact that up to the time of the garnishment the corporation had made no demand upon him to pay over the money. It was there conceded that if his

possession would be the possession of the corporation, garnishment against him would not lie, since it would be equivalent to garnishment of the defendant itself. The authorities pro and con were discussed, and the conclusion was reached that the treasurer's possession in that case was not the possession of the corporation, but was his own exclusive possession subject to be drawn upon by the corporation, and was therefore subject to garnishment.

If in that case instead of the treasurer having had in his segregated and exclusive possession the funds of the corporation they had remained in the corporation's till or safe on its premises, the further fact that a corporate treasurer or other officer was in the full management and control of the corporate business would not have made such officer subject to garnishment because of his possession of the funds. In such case the funds would be regarded as in the possession of the corporation itself. The supposed facts closely approximate those of the case at bar.

Bankrupt was conducting a small furniture factory. Appellants and the public dealt with it as a corporation, suing and taking judgment against it as such. No one contends it was not a corporation, or that its business was not conducted as such. The fact that its principal stockholder was also its president and treasurer and manager, and exercised dominating supervision of its business, is to no extent a determining feature on the question of whether or not the corporation was in possession of its assets.

How could it be said that Heyer, as an individual, had in law the possession of the real estate? It belonged to the bankrupt; there was no conveyance or instrument of any sort transferring it or any interest therein to Heyer; it does not appear that he had or asserted individual right therein; and just how the control which he exercised over the corporation made his presence on the premises other than corporate possession of the real estate we cannot conceive, and we are very certain the Wisconsin courts do not go thus far.

As to the machinery and the merchandise and the material in process of manufacture, and all the other chattels which came into the trustee's possession, we cannot see by what token or reasoning they were in the possession of any one except the corporation. The question of the lawful possession of the property in nowise depends upon whether the corporation is conducted as a despotism or a democracy. The degree of an officer's control or domination of the corporate business in no sense determines whether the property is in his possession as an individual or whether it is in the possession of the corporation which actually owns and operates it.

Circumstances are conceivable where, in derogation of corporate possession and control, an officer segregates the property unto himself, and with or without consent of the corporation holds it within his own possession and control separate and apart from the corporation. Such a situation is presented where, say, a corporate treasurer, as in the Mayo Case, takes corporate cash and securities from the corporate coffers, segregates them unto himself, and holds them in his own exclusive possession and control subject to the order of the corporation. Here no cash or securities are involved, only chattels and real estate used by the corporation to carry on its corporate business.

There were always three directors, two of whom potentially controlled possession of the property. Whether they resisted Heyer's domination of the affairs of the corporation or acquiesced therein, the property is none the less the corporate property in the open and notorious possession of the corporation, and used all the time for corporate purposes.

We cannot agree that Mayo v. Hansen, supra, controls this case; but, on the contrary, we conclude that the referee and the District Court correctly held that this garnishment gave no lien upon the property.

The order appealed from is affirmed.